**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| LEANORA A. ROYSTER, | : | |
| Plaintiff, | : | |
| | | Case No. 3:08CV009 |
| | : | |
| vs. | | District Judge Walter Herbert Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| PACIFIC CREDITORS, ASSOCIATION, *et al.*, | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATIONS[1]**

**I.    INTRODUCTION**

Plaintiff Leonora Royster brings this case claiming that several Defendants – including Defendant Pacific Creditors Association (Pacific Creditors), a California corporation – violated her rights under the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. Plaintiff and three Defendants have agreed to settle their differences. (Doc. #s 33, 35, 36). Pacific Creditors is the sole remaining Defendant.

At the outset of this case, Plaintiff effected service of summons on Pacific Creditors (Doc. #4), but Pacific Creditors failed to answer or otherwise plead to the First Amended Complaint. The Court therefore directed the Clerk of Court to enter Pacific Creditors' default in the record of the case pursuant to Fed. R. Civ. P. 55(a). Plaintiff thereafter filed a Motion for Default Judgment, to which Pacific Creditors did not respond. Finding that default judgment was warranted against

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Pacific Creditors, the Court granted Plaintiff's Motion for Default Judgment and set the matter for a damages hearing. (Doc. #s 27, 28, 31).

The damages hearing occurred on August 11, 2008, during which Plaintiff testified. Pacific Creditors did not appear at the hearing and has not taken any action in this case since receiving service of summons in January 2008. (Doc. #4 at 2).

The case is now before the Court for determination of the amount of damages to be assessed against Pacific Creditors. *See* Doc. #s 28.

**II. BACKGROUND**

Because Pacific Creditors has not filed an Answer or otherwise responded to the Complaint and is therefore in default, the following well-pled factual allegations of the First Amended Complaint are accepted as true. *See Yang v. Hardin*, 37 F.3d 282, 286 (7th Cir. 1994); *see also Trice v. Lake & Country Real Estate* 1987 WL 38852 at *2 (6th Cir. 1987)("a 'default judgment establishes, as a matter of law, that defendants are liable to plaintiff as to each cause of action alleged in the complaint....' Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true.")(quoting parenthetically *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323 (7th Cir.1983)); *LaSalle Bank National Ass'n v. Appleton*, 2007 WL 2344708 at *2 (S.D. Ohio 2007)(Beckwith, Chief D.J.; Black, M.J.).

Plaintiff previously filed suit against Pacific Creditors in the United States District Court in San Francisco, California. At that time, Plaintiff was living in California. *See* Doc. #6 at pp. 3-5. The prior case was resolved when Plaintiff and Pacific Creditors reached a settlement agreement. The agreement required Pacific Creditors to remove a derogatory remark from Plaintiff's credit reports and to pay court costs, and in exchange, Plaintiff voluntarily dismissed her case against Pacific Creditors. Despite that agreement, the derogatory remark was not removed from Plaintiff's

2

credit report and Plaintiff's "credit report never improved with an account showing an unpaid balance in the amount of One Thousand Fourteen Hundred Dollars ($1,400)." (Doc. #6 at ¶14).

Over the next several years, Plaintiff repeatedly applied for credit but was denied because of Pacific Creditors' derogatory remark in her credit reports. Although she attempted to get Pacific Creditors to remove the derogatory remark, it remained a bar to her ability to obtain credit. In June 2007, Plaintiff's job was transferred and she moved from California to Dayton, Ohio.

Plaintiff's credit struggles continued. In November 2007, for example, Plaintiff applied for a mortgage but was denied due to the derogatory remark by Pacific Creditors in her credit reports. As of January 2008, Plaintiff was unable to obtain a mortgage and was driving 200 miles to work because she could not purchase a home closer to her job. (Doc. #6 at pp. 4-7).

As to her damages, Plaintiff claims in her Complaint that Defendants' acts caused her "financial injury, defamation, physical and emotional distress and physical injury including but not limited to headaches, stomach aches, sleep loss..., a loss of significant housing opportunity, paying higher interest rates, and loss of the opportunity to obtain reliable transportation, including actual damages in the amount of Five Hundred Thousand dollars ($500,000.00)." (Doc. #6 at ¶34). She further states in her Complaint, "Most importantly, I have been forced to commute 200 miles a day because I was unable to obtain financing to purchase a home near my job. My damages are increasing by the day." *Id*.

In her Motion for Default Judgment, and during the damages hearing, Plaintiff asserted that Pacific Creditors' derogatory remark has deflated her FICO credit score thus forcing her to pay a higher interest rate when she was able to obtain credit. She explained that by the time of the damages hearing, Plaintiff had been able to secure a $100,000/thirty-year mortgage at an interest rate (8.75%) well above the interest rate (6.25%) she would have been eligible for if Pacific

3

Creditors had removed its derogatory remark, as it had agreed. Plaintiff testified during the damages hearing that the higher interest rate on the thirty-year mortgage will cost her an additional $60,500.60 in interest above what she would have paid but for Pacific Creditors' failure to remove the derogatory remark from her credit reports.

Plaintiff testified during the damages hearing that she has suffered pain and suffering – including headaches, sleeplessness, embarrassment, and humiliation – because of Pacific Creditors' failure to remove the derogatory remark. Although she acknowledged that she had not obtained treatment by, or medication from, a psychiatrist, she has needed ibuprofen and Tylenol daily to treat her headaches.

Plaintiff further testified that her actual damages included the cost of driving 200 per day to work during the time she was unable to obtain a mortgage and purchase a home closer to her job.

### III.  ANALYSIS

"The Fair Debt Collection Practices Act was enacted in 1977 in response to public perception of the use of unfair and abusive debt collection practices by many debt collectors. The statutory purpose of the act is set forth in 15 U.S.C. § 1692(e):

> It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

To achieve this broad remedial purpose, the statute makes violators of its provisions liable for actual damages, statutory damages, costs, and attorney's fees. 15 U.S.C. § 1692k." *Frey v. Gangwish*, 970 F.2d 1516, 1518 (6th Cir. 1992); *see Lee v. Thomas & Thomas*, 109 F.3d 302, 304 (6th Cir. 1997). The specific damages language in the Fair Debt Collection Practices Act (FDCPA) provides in part:

4

> Except as provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of –
>
> > (1) any actual damages sustained by such person as a result of such failure;
> >
> > (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000....

15 U.S.C. §1692k(a).

Beginning with the amount of statutory damages, Plaintiff seeks a total award of statutory damages equaling $23,000. Plaintiff contends that Pacific Creditors violated the FDCPA 23 times (from May 2007 through March 2008) – one violation occurring each time she unsuccessfully applied for a mortgage resulting in 23 rejected applications. She further contends that each violation warrants an imposition of $1,000 in statutory damages (23 violations x $1,000 = $23,000).

In light of the well-pled factual allegations in the Complaint and Plaintiff's unopposed testimony during the damages hearing and the information set forth in her Motion for Default Judgment, Plaintiff has established that Pacific Creditors breached the parties' prior settlement agreement by failing to remove the derogatory remark from Plaintiff's credit report. In addition, Pacific Creditors' breach left in place its report to the credit bureaus of knowingly false information about a non-existent debt supposedly held by Plaintiff, which in turn led to 23 separate FDCPA violations from May 2007 through March 2008. *See* 15 U.S.C. §1692e. Plaintiff is therefore entitled to statutory damages under the FDCPA. *See* 15 U.S.C. §1692k(a)(2)(A).

But the FDCPA does not support Plaintiff's application of $1,000 in statutory damages to each separate FDCPA violation because each violation was related to the same underlying proceeding – Pacific Creditors' failure to remove the derogatory remark as required by the parties' settlement agreement and its resulting and knowing false report of information to the credit bureaus.

5

The United States Court of Appeals for the Sixth Circuit has held, "15 U.S.C. §1692k(a)(2)(A) limits a plaintiff's additional damages to $1,000 'per proceeding' rather than 'per violation.'" *Wright v. Finance Service of Norwalk, Inc.*, 22 F.3d 647, 651 (6th Cir. 1994). Plaintiff is therefore entitled to total award of statutory damages in the amount of $1,000. *See id.*

Turning to her actual damages, Plaintiff has established that Pacific Creditors' failure to comply with the terms of the settlement agreement have caused her $60,500.60 in actual damages. The continuing presence of the false derogatory remark, due to Pacific Creditors' conduct, caused her FICO score to be lower than it would have otherwise been, thus requiring her pay a significantly higher interest rate (2.75 point higher) on the $100,000/30-year mortgage she was eventually able to obtain. Pacific Creditors' breach of the settlement agreement and continued refusal to correct its prior false derogatory remark to the credit bureaus thus caused Plaintiff to incur $60,500.50 in actual damages.

Plaintiff has also suffered emotional harm caused by Pacific Creditors' breach of the settlement agreement and failure to remove the derogatory remark from Plaintiff's credit reports. Although Plaintiff has not presented documentary evidence in support of the extent of her emotional injury, her unopposed testimony during the damages hearing establishes that Pacific Creditors' breach and inactions caused her such harm. She is therefore entitled to a reasonable, non-speculative amount of damages to compensate for this actual harm. Given the lack of supporting documentation or other evidence, Plaintiff must rely on her testimony alone to establish the amount of these damages. Because the record presents no reason to discount or reject Plaintiff's testimony, she is entitled to reasonable compensation in the amount of $1000.00 for her emotional injuries.

Lastly, Plaintiff has not presented any specific information about the financial harm she suffered by needing to drive 200 miles to work during the time she was unable to secure a

mortgage. She has therefore not established the amount of actual damages she suffered as a result of her longer commute to and from work.

In sum, Plaintiff has established that she is entitled to a Default Judgment against Defendant Pacific Creditors Association in the total amount $61,500.50. Plaintiff is also entitled to recover her costs, pursuant to 28 U.S.C. §1920. It appears that she is entitled to costs in the total amount $445.00 ($95.00, the cost of serving summons on Pacific Creditors, and the $350.00 filing fee). Before such costs are awarded, however, Plaintiff must file a verified Bill of Costs setting forth the amount of her claimed costs. *See* 28 U.S.C. §§1920, 1924.[2]

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's Motion for Default Judgment (Doc. #26) be GRANTED;

2. Default Judgment be entered against Defendant Pacific Creditors Association and in favor of Plaintiff, pursuant to Fed. R. Civ. P. 55(b) in the total amount of $61,500.50, plus costs; and

3. The case be terminated on the docket of this Court.

September 30, 2008

                                                                   s/ Sharon L. Ovington
                                                                        Sharon L. Ovington
                                                           United States Magistrate Judge

---

[2] "Before any bill of costs is taxed, the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or by his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed." 28 U.S.C. §1924.